**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| NICKALUS ERIK PETERSON,<br><br>Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil No. 19-00628-CV-W-SRB-P<br>Crim. No. 10-00033-02-CR-W-SRB |

**GOVERNMENT'S MOTION TO DISMISS
AND SUGGESTIONS IN OPPOSITION
TO MOVANT'S MOTION UNDER 28 U.S.C. § 2255**

The respondent, the United States of America, respectfully requests that this Court dismiss with prejudice the motion under 28 U.S.C. § 2255, filed by the movant, Nickalus Erik Peterson, seeking to vacate his sentence. The Government provides the following suggestions in support of dismissal and in opposition to the motion:

**I. Summary**

In 2011, Peterson pleaded guilty to drug, money-laundering, and firearm offenses for his role in a conspiracy to distribute methamphetamine. The plea was tendered pursuant to a binding plea agreement with the Government, wherein the parties stipulated to a sentence of 20 years. At the time the parties entered into the agreement, the Government erred in calculating that Peterson would be subject to a combined statutory range of punishment of 15 years' to life imprisonment. The presentence investigation report (PSR) applied a statutory enhancement to the minimum sentence on drug offense, which resulted in a combined statutory minimum of 25 years' to life imprisonment. Essentially, the PSR

found that the agreement did not comport with the statutory range of punishment. To remedy this error, the Government dismissed the five-year consecutive gun charge, and Peterson received the 20-year sentence he bargained for in the binding plea agreement.

Peterson has now filed a motion seeking to vacate his sentence under § 2255. Peterson contends that the statutory enhancement renders the sentence illegal. Peterson argues that this Court improperly found that a death resulted from the distribution of the drug, triggering the enhanced statutory minimum under 21 U.S.C. § 841(b)(1)(A). Peterson alleges that an autopsy report precludes such a finding. Peterson requests that he be resentenced to a range of 151 to 188 months.

Peterson's motion is precluded by the waiver contained within the plea agreement. As Peterson's current sentence is not illegal, that post-conviction and appeal waiver exception is inapplicable. Additionally, the claim is untimely. Peterson's reliance upon new evidence is a red herring. At its core, Peterson's claim is that this Court erred in applying the enhanced statutory minimum. That claim is not predicated on the alleged "new evidence" Peterson claims to exist. Therefore, the acquisition of that evidence does not dictate timeliness. Once the binding plea agreement was accepted by this Court, this Court must impose the stipulated sentence contained in the binding plea. Therefore, even if the claim was not barred by the waiver or barred by it being untimely, Peterson cannot demonstrate he is entitled to relief.

This Court should dismiss the motion with prejudice as contrary to the appeal waiver and untimely, or deny the claim on the merits.

-2-
Case 4:19-cv-00628-SRB   Document 6   Filed 09/11/19   Page 2 of 20

## II. Factual and Procedural History

On February 5, 2007, Miranda McClintock was stopped by a deputy with the Johnson County, Missouri Sheriff's Department for a faulty license plate light.[1] After being stopped, McClintock was placed under arrest for an outstanding warrant. A vehicle search yielded drug paraphernalia, including a glass pipe, commonly used to smoke methamphetamine, a glass pipe with suspected marijuana residue, a lighter, a straw, rubber bands, and a clear plastic baggie with a green dollar sign that contained a green tablet. Based on her fast-talking and tapping her foot on the floorboard of the patrol car, the deputy believed McClintock was under the influence of a stimulant. McClintock denied that she had used or ingested any drugs and stated she was fine.

From the jail, McClintock was transferred to a hospital by an ambulance. After admission for treatment, McClintock told medical personnel that she had swallowed several packets of methamphetamine. The treating physician reported she was suffering symptoms of a massive drug overdose, including hyperthermia (overheating of the body) with a temperature of 108 degrees and tachycardia (abnormally rapid heart rate). McClintock died at the hospital. During the autopsy, plastic baggies were recovered from her stomach. The coroner determined that the cause of death was acute methamphetamine toxicity. (Civ. D.E. 1-1.)[2]

---

[1] The factual history is summarized from the stipulated facts contained in the plea agreement and the undisputed facts contained within the PSR without further citation.

[2] "Civ. D.E." refers to the docket entry number in the § 2255 matter, *Peterson v. United States*, No. 19-00628-CV-W-SRB-P.

-3-
Case 4:19-cv-00628-SRB   Document 6   Filed 09/11/19   Page 3 of 20

Peterson admitted to a friend of McClintock that he had sent McClintock to Warrensburg, Missouri, that day to deliver some methamphetamine. He reportedly told McClintock to swallow the methamphetamine if she were stopped by police, and that she could vomit it up later. Peterson was McClintock's source of methamphetamine.

A long-term investigation into methamphetamine distribution followed, resulting in charges against numerous defendants in several cases. The investigation revealed that Peterson had been distributing methamphetamine since 2006, obtaining drugs from several sources and supplying other mid-level dealers. Statements from Peterson's customers, including Heather Marie Burkhart and James G. Cates, demonstrated that Peterson was conservatively responsible for distributing at least 12.76 kilograms of methamphetamine.

On April 7, 2010, Peterson was charged by indictment in the Western District of Missouri with: (1) conspiracy to distribute 500 grams or more of methamphetamine in Count One, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; (2) money laundering in Count Two, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (h); and (3) possessing a firearm in furtherance of a drug trafficking offense in Count Four, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Crim. D.E. 40.)[3] The statutory penalties for the offenses were 10 years' to life imprisonment on Count One; up to 20 years on Count Two;

---

[3]"Crim. D.E." refers to the docket entry number in the criminal matter, *United States v. Peterson*, No. 10-00033-02-CR-W-SRB.

and a consecutive term of five years' to life imprisonment on Count Four, for a combined statutory range of punishment of 15 years' to life imprisonment.[4]

On December 16, 2011, Peterson appeared and pleaded guilty pursuant to a plea agreement with the Government. (Crim. D.E. 172, 178.) Peterson agreed to plead guilty to all three counts, under a binding plea agreement under Fed. R. Crim. P. 11(c)(1)(C), to a stipulated sentence of 20 years' imprisonment, pursuant to pages 1 and 2 of the written and filed plea agreement between the parties. (Plea Agrmt. 1-2.) This stipulated sentence was achieved through a sentence of 15 years on Count One; a sentence up to 15 years on Count Two; and a mandatory consecutive sentence of five years on Count Four. (Plea Agrmt. 4-5.) The agreement contained a factual recitation of the offense conduct. (Plea Agrmt. 2-3.) That factual basis included discussion that the Government would introduce evidence that the death of McClintock was attributable to the drug distribution of the conspiracy. (Plea Agrmt. 3.) However, the agreement did not take into account the enhanced statutory minimum for Count One.[5] (Plea Agrmt. 4-5.)

Through the agreement, Peterson agreed to the sentencing procedures to be utilized by the district court, including the use of relevant conduct; the preparation of the PSR; and the calculation of the advisory Sentencing Guidelines. (Plea Agrmt. 3-10.) The agreement

---

[4]Prior to this indictment, Peterson had been charged and pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *United States v. Peterson*, No. 09-00258-01-CR-W-ODS. That case is not implicated in this § 2255 motion.

[5]That provision normally carries a statutory penalty of 10 years to life, but "if death or serious bodily injury results from the use of such [distributed] substance," the penalty "shall be not less than 20 years or more than life."

further clarified that the Sentencing Guidelines were advisory, but that if the court accepted the binding plea agreement, the court lacked discretion to impose a sentence other than that stipulated to in the agreement. (Plea Agrmt. 5, 8.) Peterson waived his constitutional right to a jury trial. (Plea Agrmt. 10-11.) Peterson also waived his right to collaterally attack his sentence, except for a case of an illegal sentence. (Plea Agrmt. 11.) In this case, the plea agreement defined an illegal sentence as a sentence imposed in excess of the binding stipulated sentence. (Plea Agrmt. 11.) Peterson executed the plea agreement on December 16, 2011. (Plea Agrmt.15.)

On March 1, 2012, a final PSR was issued. The PSR contained a lengthy description of the offense conduct. (PSR 8-33, ¶¶ 19-121.) The PSR determined Peterson was responsible for distributing a conservative drug quantity of 12.76 kilograms of methamphetamine. (PSR 33, ¶ 116.) The PSR determined a base offense level of 38 under U.S.S.G. § 2D1.1(a)(2), because death or serious bodily injury resulted from the use of the substance. (PSR 34-35, ¶ 125.) The PSR applied a two-level enhancement under § 2S1.1(b)(2)(B) for money-laundering, and a three-level reduction under § 3E1.1(a) and (b) for acceptance of responsibility. This resulted in a total offense level of 37. (PSR 35, ¶¶ 126-135.) The PSR calculated 18 criminal history points, yielding a criminal history category of VI. (PSR 38-42, ¶¶ 142-160.) This resulted in an advisory Sentencing Guidelines range of 360 months' to life imprisonment on Count One, plus 60 months consecutive on Count Four. (PSR 54, ¶ 197.)

The PSR also determined that the statutory range of punishment on Count One was not less than 20 years and not more than life under § 841(b)(1)(A), because McClintock's

death resulted from the use of the methamphetamine that was provided to her by Peterson. (PSR 54-55, ¶¶ 196, 198-200.) When combined with the statutory consecutive sentence of five years on Count Four, this resulted in a combined statutory range of 25 years to life. (PSR 54, ¶ 196.) Thus, the stipulated sentence in the plea agreement was illegal. The Government objected. (PSR Adden. March 1, 2012.)

On April 16, 2012, Peterson appeared for sentencing. (Crim. D.E. 210.) Peterson did not object to the Sentencing Guidelines calculations. (Sent. Tr. 2.) The sentencing court noted the stipulated binding sentence of 20 years, and noted that the legal statutory range of punishment was 25 years to life. (Sent. Tr. 2.) The sentencing court noted it would honor the plea agreement if the Government rectified its legality. (Sent Tr. 2-3.) The court suggested either refraining from introducing evidence to support the enhanced statutory minimum, or dismissing Count Four. The Government admitted that it had made a mistake. (Sent. Tr. 3.) To rectify the legality, the Government dismissed Count Four, the consecutive five-year sentence, and also did not put on evidence during the hearing. (Sent. Tr. 3-4.)

Defense counsel argued that the stipulated sentence in the binding plea agreement was an appropriate resolution and a fair plea for Peterson. (Sent. Tr. 4-7.) Peterson personally addressed the court, and reaffirmed his desire for the stipulated 20-year sentence. (Sent. Tr. 7.) Peterson accepted responsibility for McClintock's death. (Sent. Tr. 7.) Peterson stated to the court, "I just ask for the 20 years and I'll go do my time and I'll try to be a father to my child and that's all I want is to just move on." (Sent. Tr. 7.) The sentencing court noted that the binding plea agreement obviated the need to discuss

the Guidelines, but that the stipulated sentence of 20 years was an appropriate disposition under the statutory sentencing factors. (Sent. Tr. 8-9.) The court then imposed concurrent 20-year sentences on Peterson. (Sent. Tr. 9.) Peterson did not appeal.

### III. Argument and Authorities

Peterson has now filed a motion seeking to vacate his sentence. Peterson essentially contends that his sentence is illegal. "In a § 2255 proceeding, the burden of proof with regard to each ground for relief rests upon the petitioner." *Kress v. United States*, 411 F2d 16, 20 (8th Cir. 1969). Peterson's motion is barred by the appeal waiver and untimely, and the claim of an illegal sentence is without merit. The motion should be dismissed with prejudice or denied on the merits.

#### A. *Peterson's Motion is Barred by the Post-Conviction Waiver*

The courts have recognized that criminal defendants may waive their post-conviction rights, just as they may waive their right to appeal, considering those rights synonymous. *United States v. Andis*, 333 F.3d 886, 887 n.3 (8th Cir. 2003) (en banc) (citing *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000) ("As a general rule, we see no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in the plea agreement context.")). The Supreme Court has stated that "[t]o allow indiscriminate hearings in federal post-conviction proceedings, whether for federal prisoners under 28 U.S.C. § 2255 or state prisoners under 28 U.S.C. §§ 2241-2254, would eliminate the chief virtues of the plea system speed, economy, and finality." *Blackledge v. Allison*, 431 US. 63, 71 (1977).

There are narrow exceptions to the enforceability of such waivers, such as when the district court imposes an "illegal sentence," *i.e.*, a sentence in excess of the statutory maximum, or where the enforcement of such a waiver would result in "manifest injustice," *Id.* at 891-92. A claim of error in calculation of the advisory Sentencing Guidelines is insufficient to prove a miscarriage of justice. *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995)) (other citations omitted). Claims that the sentence was too severe or excessive, provided the sentence is within the statutory range, are not allowed. *Houser v. United States*, 508 F.2d 509, 516 (8th Cir. 1974).

In this case, Peterson agreed that an illegal sentence was a sentence imposed in excess of the binding stipulated sentence. (Plea Agrmt. 11.) Peterson received the sentence he bargained for in the binding plea agreement. Therefore, the clause in the waiver that invalidates the waiver is not at issue.

Peterson has failed to show that the 20-year sentence is illegal or otherwise a miscarriage of justice. Peterson appears to contend that because the court applied the enhanced statutory minimum, his sentence is *per se* illegal.[6] Regardless which it applied, the sentence imposed is a legal sentence. Following the dismissal remedy, the sentencing court applied the stipulated sentence in the plea agreement. That stipulated sentence was

---

[6] The record is not clear which statutory minimum (10 or 20 years) the Court applied on Count One. The Government did not provide any additional evidence at sentencing to support the enhancement. However, the stipulated facts in the plea agreement and the undisputed facts in the PSR support the enhancement. As discussed below, Peterson did not object to the death finding, and indeed, at sentencing, he admitted he was responsible.

lawful. Under *Andis*, an illegal sentence is one above the statutory maximum. The statutory maximum in this case was life imprisonment. Therefore, regardless which statutory minimum the sentencing court applied, the sentence imposed is not illegal. Peterson provides no argument or analysis that demonstrates that the sentence is otherwise a miscarriage of justice. Peterson received exactly the sentence he bargained for in the plea agreement and requested at the sentencing hearing.

Because the sentence is not illegal or a miscarriage of justice, Peterson waived the right to prosecute the claim, and therefore this Court should dismiss the motion with prejudice.

## B. *Peterson's Motion is Untimely*

A one-year time-limit applies to a motion under § 2255, starting from:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Claims that are not filed within the time limits should be dismissed. *See Moore v. United States*, 173 F.3d 1131, 1133-35 (8th Cir. 1999); *Campa-Fabela v. United States*, 339 F.3d 993, 993-94 (8th Cir. 2003). Although "not a jurisdictional bar," *Moore*, 173

F.3d at 1134, a district court is precluded from considering the merits of untimely claims where the Government timely raises a statute-of-limitation defense. *See United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999).

Peterson was sentenced on April 17, 2012. Peterson's conviction became final on May 1, 2012, when the time to file a notice of appeal expired. *See Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n.2 (8th Cir. 2008); Fed. R. App. P. 4(b)(1)(A). To be timely under § 2255(f)(1), Peterson was required to submit his motion by May 1, 2013. The motion is untimely.

Peterson contends that the motion is timely under § 2255(f)(2) and (4). Peterson contends he recently came into possession of the autopsy report for McClintock's death, and the report demonstrates that the methamphetamine she ingested was not responsible for her death. Peterson points to other drugs and medical issues, discussed in the autopsy report that might have contributed McClintock's death. Peterson contends that the autopsy report proves he was not subject to the enhanced sentence, pointing to the Supreme Court decision in *Burrage* as the applicable legal authority. *Burrage v. United States*, 571 U.S. 204 (2014).

*Burrage* was decided nearly two years after Peterson was sentenced. The rule in *Burrage* is an extension of the rule discussed in *Alleyne v. United States*, 570 U.S. 99, 114-15 (2013), based on *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that any fact that alters the legally prescribed punishment must be submitted to the jury and proven beyond a reasonable doubt. *Burrage*, 571 U.S. at 210. The *Burrage* decision held that a heightened standard of causation applied to the enhancements under 21 U.S.C. § 841(b)(1)(A)-(C).

*Burrage v. United States*, 571 U.S. 204, 218 (2014) ("where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision"); *see also Roundtree v. United States*, 885 F.3d 1095, 1097-98 (8th Cir. 2018) (recognizing a heightened standard of causation post-*Burrage* but affirming conviction because defendant failed to preserve the claim).

However, unlike the defendant in *Roundtree*, Peterson is not attempting to invalidate a jury verdict predicated on an erroneous jury instruction, due to *Burrage*. Peterson's statutory enhancement was not determined by a jury beyond a reasonable doubt at sentencing. If Peterson's sentencing court applied the enhanced statutory minimum, it did so without a jury finding it beyond a reasonable doubt. Thus, Peterson's claim is not based on *Burrage*; it is based on the rule of law applied in *Alleyne*.

Peterson pleaded guilty and was sentenced before *Alleyne* held that statutory sentencing factors be found by a jury beyond a reasonable doubt. The rule in *Alleyne*, an extension of *Apprendi*, is not retroactive. *United States v. Moss*, 252 F.3d 993, 997 (8th Cir. 2001) (*Apprendi* claims are not retroactive to cases on collateral review); *United States v. Olvera*, 775 F.3d 726, 730 & n.12 (5th Cir. 2015) (*Alleyne* is not retroactive to cases on collateral review and collecting cases). To the extent Peterson substantively raises a retroactive *Alleyne* claim, that claim is (1) untimely, because it was not filed within one year of the *Alleyne* decision; and (2) barred because *Alleyne* is not retroactive.

Peterson executed a waiver of a jury finding of sentencing facts beyond a reasonable doubt, permitted the sentencing court to find sentencing factors on a preponderance of the

evidence.[7] Thus, any *Alleyne* error was waived, and if he had a valid *Burrage* claim, that would also be waived.

Peterson did not object at sentencing to the enhanced statutory minimum or the finding that the drugs caused McClintock's death. In fact, Peterson admitted that the drugs caused McClintock's death.[8] Therefore, this claim is not cognizable. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal citation omitted); *see also United States v. Frady*, 456 U.S. 152, 165 (1982) ("a collateral challenge may not do service for an appeal").

The autopsy report, which Peterson relies upon to establish a new one-year period to file the motion, is a red herring. The autopsy report is only relevant if Peterson can demonstrate an instructional error based on *Burrage* that is cognizable under § 2255. Peterson challenges the district court's finding of the enhanced statutory minimum, not the

---

[7]"The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support the herein recommended sentence, any specific offense characteristic, or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay." (Plea Agrmt. 9.)

[8]"You know, Miranda McClintock, you know, she, she should be alive. She shouldn't be dead. And that's and I accept the responsibility for that. And I know she's got a little brother and so that's hard to deal with, you know, knowing that I assisted in her death, you know. Not to say she couldn't have got it from somewhere else. I accept responsibility for my part in that." (Sent. Tr. 7.)

jury instruction, and the autopsy report has no bearing on an *Alleyne* claim. Peterson could have raised the *Alleyne* claim without the autopsy report by filing a motion within one year of the *Alleyne* decision. The problem with an *Alleyne* claim, as discussed above, is that *Alleyne* is not retroactive.

Finally, even if the claims were not barred, Peterson's allegation of due diligence is legally insufficient. Peterson contends that he received a copy of the autopsy report when an unidentified third party acquired a copy of the report on his behalf. Peterson contends that his Freedom of Information Act (FOIA) waiver precluded his ability to receive the report from the U.S. Attorney's Office. Peterson does not state exactly what steps the unidentified third-party took to retrieve the autopsy report on Peterson's behalf, or the date of those steps.

Peterson filed his FOIA request in March 2016. The request was denied, through a letter, issued by the FOIA section of Executive Office for the United States Attorneys, Department of Justice, on March 29, 2016.[9] Peterson's request was not within one year of *Alleyne*, decided on June 17, 2013, or *Burrage*, decided on January 27, 2014. Even if Peterson was raising a claim under *Burrage*, as he asserts, his request for the supporting records was not within one year of the *Burrage* decision. Further, county autopsy reports, like death certificates, are publicly available records, which may be requested by anyone once the medical examination case is closed. Peterson could have retrieved a copy of the

---

[9]The denial cited the FOIA waiver. Peterson would have been unable to retrieve a copy of the autopsy report from the Government, even if he retained his FOIA rights. After the case concludes, the Government does not retain documents prepared by third-party agencies in the case file.

-14-
Case 4:19-cv-00628-SRB   Document 6   Filed 09/11/19   Page 14 of 20

autopsy report from the Johnson County, Missouri, any time after the final report was issued. Peterson has failed to demonstrate due diligence.

For all these reasons, this Court should dismiss the motion procedurally, as contrary to the post-conviction waiver and untimely.

### C.     *Conclusions Regarding Autopsy Report Are Erroneous*

Peterson's claims regarding the autopsy report are erroneous. Peterson requests that this Court retroactively find that he was not subject to the enhanced statutory minimum based on selected facts in the report. Peterson ignores the medical conclusion that McClintock died of acute methamphetamine toxicity. Peterson asks that this Court to rely on certain sections of the report, but completely disregard other sections of the report. Peterson offers no additional medical evidence regarding McClintock's cause of death. Peterson's claim is a conclusory allegation unsupported by the facts he presents in the autopsy report. Peterson's assertion that the report demonstrates he was ineligible for the statutory enhanced minimum sentence is erroneous.

### D.     *This Court is Bound to the Stipulated Sentence*

Even if Peterson's motion was not procedurally defaulted, this Court would be bound to impose the same sentence. Peterson contends that this Court should vacate the sentence and resentence him because the statutory minimum sentence on Count One was erroneously enhanced. But after accepting the binding plea agreement, the sentencing court was required to impose the stipulated sentence contained in the plea agreement. Thus, even if this Court were to vacate the sentence, it would be bound to re-impose the same sentence.

Peterson has not alleged or proven that his guilty plea and the binding plea agreement are illegal or unconstitutional. Furthermore, Peterson ignores that Count One carries a range up to life and he was sentenced within that range. Peterson further ignores that he is subject to a concurrent sentence of 20 years' imprisonment on Count Two. The Government's dismissal of Count Four eliminated the need to stack sentences, Count Two was not subject to any statutory enhancement, and the 20 year sentence on it was within the statutory range of punishment and comported with the binding plea. Even if this Court could vacate and impose a different sentence on Count One, which it may not under the binding plea, Peterson has not demonstrated any reason, even an illegitimate one, to vacate the sentence on Count Two.

Peterson is clearly dissatisfied with his sentence. Peterson should consider himself fortunate. Although the Government failed to calculate for the statutory enhancement, the Government knew Peterson would receive a large variance from the likely advisory Sentencing Guidelines range resulting from his guilty pleas, which was calculated in the PSR to be 420 months' to life imprisonment. However, the Government intended that Peterson would be held accountable for all of the crimes in the indictment, including the death of McClintock. (Plea Agrmt. 3.) The Government did not contemplate the need to dismiss Count Four. When negotiating the binding plea agreement and 20-year stipulated sentence, the Government overlooked the enhanced statutory minimum on Count One. Under the law, at the time of his sentencing, Peterson's combined statutory range was actually 25 years to life, not 15 years to life. The Government admitted the error at sentencing, took the necessary remedial action of dismissing Count Four, thereby

preserving the stipulated sentence. (Sent. Tr. 3-4.) As defense counsel admitted, the fact that Peterson was subject to only a 20-year sentence was a favorable plea deal. (Sent. Tr. 6.) Peterson reaffirmed his desire for the 20-year sentence. (Sent. Tr. 7.)

Peterson's belated misgivings about the length of the sentence do not render the sentence illegal. Peterson has failed to present a *Burrage* claim. While Peterson complains that the sentencing court, rather than a jury, applied the statutory minimum enhancement absent a jury verdict, he waived that in his plea agreement. Additionally, the *Alleyne* rule of law was handed down after Peterson was sentenced and its changes are not retroactive. Peterson's claim is procedurally barred, and should be dismissed; but even if the claim were not barred, this Court remains bound by the stipulated binding plea. Therefore the claim fails on the merits.

### E. *An Evidentiary Hearing Is Not Required To Resolve the Claims, and this Court Should Deny A Certificate of Appealability*

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id.* (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)); *see also Allen v. United States*, 854 F.3d 428, 433 (8th Cir. 2017) (a § 2255 motion can be dismissed without a hearing if (1) a movant's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are

contradicted by the record, inherently incredible, or conclusions rather than statements of fact) (internal citation omitted).

As the preceding discussion makes clear, Peterson's allegations are contrary to the law and the record of the proceeding. Peterson has not demonstrate an illegal sentence or a miscarriage of justice. The claim is untimely, and the actual substantive claim of *Alleyne* error is barred because *Alleyne* is not retroactive. The claim does not turn upon the facts in the affidavit, but only on the law. This Court should therefore deny the motion without holding an evidentiary hearing.

A movant can appeal the denial of a § 2255 motion to the court of appeals only if this Court issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). To receive a certificate of appealability, the movant must demonstrate a substantial showing of the denial of a constitutional right or raise an issue that is debatable among jurists of reason or deserving of further proceedings. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Each of Peterson's claims fails as a matter of law, and the merits of those claims are not debatable among reasonable jurists or deserving of further consideration. The Government respectfully urges this Court not only to deny Peterson's § 2255 motion, but to also deny a certificate of appealability.

## IV. Conclusion

Accordingly, for all of the reasons previously outlined, the United States respectfully requests that this Court dismiss with prejudice the motion filed by Peterson seeking to vacate his sentence.

Respectfully submitted,

TIMOTHY A. GARRISON
United States Attorney

By  /s/ Bruce A. Rhoades

BRUCE A. RHOADES
Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

*Attorneys for Respondent*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on September 11, 2019, to the CM-ECF system of the U.S. District Court for the Western District of Missouri for electronic delivery to all counsel of record, and mailed to:

>Nickalus Erik Peterson, *Pro Se*
>Reg. No. 21616-045
>USP Marion
>P.O. Box 1000
>Marion, Illinois 62959


>/s/ Bruce A. Rhoades
>Bruce A. Rhoades
>Assistant United States Attorney